**ORIGINAL**

# In the United States Court of Federal Claims

No. 16-794T
Filed: January 13, 2017

**FILED**
JAN 1 3 2017
U.S. COURT OF
FEDERAL CLAIMS

* * * * * * * * * * * * * * * * * * * *
**WILL HICKS JR.,**

   Plaintiffs,

v.

**THE UNITED STATES,**

   Defendant,

* * * * * * * * * * * * * * * * * * * *

Pro Se; 26 USC § 6402; Tax; Lack of Subject Matter Jurisdiction.

Will Hicks, Jr., pro se, Banning, California.

**Tanya B. Koenig**, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington D.C., for defendant. With her were **Brian A. Mizoguchi**, Assistant Director, Commercial Litigation Branch, **Robert E. Kirschman, Jr.**, Director, and **Benjamin C. Mizer**, Principal Deputy Assistant Attorney General, Civil Division, Department of Justice, Washington, D.C.

## OPINION

**HORN, J.**

### FINDINGS OF FACT

In the above-captioned case, pro se plaintiff Will Hicks, Jr. seeks to recover federal income tax refunds for the past two years that he alleges were illegally withheld by the defendant, acting through the United States Department of Treasury, "to pay back a state debt."[1] Plaintiff's complaint contains very few factual allegations. Plaintiff alleges that his individual income tax refund "has been garnished illegally for the past two years" and that he has made requests, "on numerous occasions," to the Department of Treasury "for evidence or certification from the State agency collecting the debt," but "has received no answer." Plaintiff also alleges that he "has no debt over 180 days delinquent . . . that are owed to the State creditor agency." Plaintiff makes no mention in his complaint on behalf of which state agency his refund was allegedly illegally garnished by the United States, in which amount his refund was allegedly garnished, the reason why the United States

---

[1] On the same day Mr. Hicks filed his complaint in this court, he also filed a motion for leave to proceed in forma pauperis, which the court granted.

allegedly garnished his refunds, or any other facts that would show that the alleged garnishment was improper. Plaintiff alleges that the government's actions violated three statutes and regulations, 31 CFR § 285.8, 31 U.S.C. § 3716(c)(6), and 31 U.S.C § 3720A(a). As relief, plaintiff seeks a "[p]roper refund of federal tax overpayments . . . for the past two years" and "[d]isclosure of State credit agencies illegal authorization to garnish the Plaintiff's federal income taxes submitted to the Department of the Treasury."

Plaintiff includes three attachments to his complaint. The first attachment is a set of four letters, dated April 30, 2015, July 7, 2015, November 17, 2015, and June 28, 2016, signed by the plaintiff, and addressed to the Department of Treasury, Bureau of Fiscal Service in Birmingham, Alabama. Each of the four letters begins with the same statement: "Please provide me the legal authorization by federal law that gives Internal Revenue Service (IRS) permission to apply my refund to an unauthorized state debt. I have not received a signed court order for this debt, so I am assuming that the federal government has it." Each of the letters then continues with what appears to be a long quotation from the same definition section of 31 CFR § 285.8(a), which plaintiff titles "***Per § 285.8 Offset of tax refund payments to collect certain debts owed to States***," and the following statement: "***Please provide me the signed court order authorizing this transaction or send me my refund. I do not want the Department of the Treasury involved in a state debt that they have no authority to resolve.***" (emphasis in original). The April 30, 2015 and July 7, 2015 letters end with this statement and the word "Thanks!". The November 17, 2015 letter continues with the following paragraph:

> The Department of the Treasury's response to go to the State agency is inappropriate. The State agency didn't take my Federal Refund, the Department of the Treasury, Internal Revenue Service did. I am just asking for the legal document that gave the Department of the Treasury the authorization to garnish my so-call [sic] State debt, it should not be that difficult to produce.

The June 28, 2016 letter concludes with a different paragraph:

> I am providing a copy of the current law suit against the State agency that is trying to collect this illegal debt. (See Attachment B) I am also providing a copy of the lawsuit that is being filed against the Department of the Treasury for illegally taking my federal refund; the department has been notified in writing of this error for more than a year. (See Attachment A)

Attached to plaintiff's complaint in this court is what appears to be a complaint from a lawsuit filed by the plaintiff against the California Employment Development Department, which may be the document the June 28, 2016 letter refers to as "Attachment B."

The next attachment included with plaintiff's complaint in this court is a letter dated January 10, 2014 from the California Employment Development Department to Mr. Hicks, titled "DEMAND NOTICE Benefit Overpayment." The letter states: "A review of your account shows that **$ 3,088.80** is due on your Unemployment/Disability Insurance/Paid Family Leave benefit overpayment. Since you have not responded to previous notices,

2

your account has been assigned to collections." The letter then requests that plaintiff repay this amount and states that "[i]f we do not hear from you, the Department may initiate legal action to collect the amount due." The letter also includes supporting records from the Employment Development Department, apparently related to the debt.

The final attachment included with Mr. Hick's complaint in this court appears to be a complaint filed on December 30, 2015 against the California Employment Development Department by plaintiff in the Superior Court of the State of California in the case of Will Hicks Jr. v. Employment Development Department, case no. RIC 1515383. The court has reviewed the docket in Will Hicks Jr. v. Employment Development Department and determined that the December 30, 2015 complaint plaintiff attached to his complaint in this court is identical to the one that he filed in California state court, except that plaintiff did not provide this court with any of the attachments that were included with the version of the complaint he filed in state court. In the state court complaint, plaintiff does alleges that he "paid the court ordered amount of $3,807.70 back and the Defendant [the California Employment Development Department] is still collecting the Plaintiff's Federal and State tax refund and all of his unemployment benefits unlawfully."[2] Based on these allegations, the state court complaint alleges that plaintiff has causes of action for "Negligent, Fraudulent Violation of Federal and State Laws by the Defendant" and that "Plaintiff is entitled to general and special damages for illegal garnishment of compensation taken by the Defendant."

Included among the attachments to plaintiff's December 30, 2015 state court complaint is a decision from the California Unemployment Insurance Appeals Board regarding an appeal filed by Mr. Hicks against the California Employment Development Department determining that Mr. Hicks had been overpaid unemployment benefits. The California Unemployment Insurance Appeals Board decision states that a copy of the decision was mailed to Mr. Hicks on December 20, 2013 and that the hearing which resulted in the decision was attended by Mr. Hicks and held on December 20, 2013. In its decision, the Board found that Mr. Hicks had received $2929.00 in unemployment insurance benefits for thirteen weeks in which he actually was performing work and that plaintiff had made a willful false statement regarding this work. Based on these findings, the Board decided that plaintiff was required to pay a total amount of $3807.70, apparently including a thirty percent penalty assessed for the receipt of overpaid benefits due to a willful false statement under Section 1375.1 of the California Unemployment Code.[3]

---

[2] As indicated above, in his complaint in this court, plaintiff states that he "has no debt over 180 days delinquent . . . that are owed to the State creditor agency."

[3] There is nothing in the record in either this court in the above-captioned case or in the California Superior Court in Will Hicks Jr. v. Employment Development Department that explains the minor discrepancy in the amount that the California Unemployment Insurance Appeals Board determined Mr. Hicks owed the California Employment Development Department on December 20, 2013, $3807.70, as opposed to the amount the Employment Development Department stated Mr. Hicks owed the Department in the January 10, 2014 notice it sent Mr. Hicks, $3088.80.

In this court, defendant has filed a motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction under the Rules of the Court of Federal Claims (RCFC) Rule 12(b)(1) (2016). Briefing on defendant's motion to dismiss was completed on November 4, 2016. The court notes that, on September 19, 2016, after defendant had filed its motion in this court in the above-captioned case, Mr. Hicks requested, and was granted, a voluntary, and, according to plaintiff, "temporary," dismissal, without prejudice, of his California state court action, Will Hicks Jr. v. Employment Development Department, pending adjudication of his case in this court. In his request for dismissal in the state court, Mr. Hicks states that "[t]he monetary results of that federal lawsuit will have a direct impact on the type of Superior Court of California case this will be."

## DISCUSSION

The court recognizes that plaintiff is proceeding pro se, without the assistance of counsel. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, pro se plaintiffs are entitled to liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524, aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied 135 S. Ct. 1909 (2015). "However, '"[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his [or her] pleading."'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9 and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995)); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

The government has moved to dismiss plaintiff's complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). The Tucker Act, 28 U.S.C. § 1491, grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2012). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289–90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 134 S. Ct. 259 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); Golden v. United States, 118 Fed. Cl. 764, 768 (2014). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401-02 [1976] ("Where the United States is the defendant and the

5

plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ontario Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. 392, 400 (1976)); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."). "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); Peoples v. United States, 87 Fed. Cl. 553, 565–66 (2009).

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. at 94 ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); Fid. & Guar. Ins. Underwriters, Inc. v. United States, 805 F.3d 1082, 1084 (Fed. Cir. 2015); Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the

6

grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2016); Fed. R. Civ. P. 8(a)(1), (2) (2016); see also Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57, 570 (2007)). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)); Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981) ("[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss."), aff'd, 460 U.S. 325 (1983). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

Although plaintiff's complaint in this court is largely devoid of factual information, plaintiff appears to allege that the Department of the Treasury has illegally garnished plaintiff's federal income tax refunds for the past two years in order to satisfy a debt plaintiff owed to an agency of the state of California, the California Employment Development Department. Defendant argues that plaintiff's complaint should be dismissed for lack of subject matter jurisdiction because none of the sources of law plaintiff alleges the defendant violated in his complaint, 31 U.S.C. § 3716(c)(6), 31 U.S.C § 3720A(a) or 26 U.S.C. § 7422, are applicable to plaintiff's case or provide this court jurisdiction to hear his claims. Defendant argues that 26 U.S.C. § 6402 authorizes the Department of Treasury to offset income tax refunds and apply them to state unemployment compensation debts such as those that plaintiff owed the state of California. Moreover, according to defendant, 26 U.S.C. § 6402(g) specifically bars plaintiff from bringing his claim against the Department of the Treasury in this court because it denies federal court jurisdiction in cases "brought to restrain or review a reduction authorized" under 26 U.S.C. § 6402. In his response to defendant's motion to dismiss, plaintiff denies that the government's actions are shielded by 26 U.S.C. § 6402(g). Plaintiff argues that although 26 U.S.C. § 6402 authorizes the Treasury Department to offset income tax refunds and apply them to outstanding federal tax liability and to "any past due and legally enforceable state debt," (emphasis in original), the state debt in his case, according to plaintiff, was not legally enforceable, as a result of which defendant is in violation of § 6402(e)(5).

Initially, the court finds that none of the statutory provisions or regulations plaintiff alleges in his complaint were violated by the defendant, 31 U.S.C. § 3716(c)(6), 31 U.S.C § 3720A(a), and 31 CFR § 285.8, provide this court with jurisdiction to hear his claim. Section 3716 states that "the head of an executive, judicial, or legislative agency may collect the claim [for money or property arising out of the activities of, or referred to, the

7

agency] by administrative offset." 31 U.S.C. § 3716(a) (2012). The provision cited by plaintiff, 31 U.S.C. § 3716(c)(6), requires that "[a]ny Federal agency that is owed by a person a past due, legally enforceable nontax debt that is over 120 days delinquent . . . shall notify the Secretary of the Treasury of all such nontax debts for purposes of administrative offset under this subsection." 31 U.S.C. § 3716(c)(6)(A) (2012). Regardless of whether these provisions are applicable to plaintiff's case, they cannot serve as sources of jurisdiction for plaintiff's claims as there is nothing in these provisions which authorizes monetary relief for their violation. Baker v. United States, 642 F. App'x 989, 992 (Fed. Cir. 2016) ("The statutory provisions relied on by Mr. Baker [including 31 U.S.C. § 3716] authorize an agency to withhold funds payable by the United States to a person to satisfy a claim, but they do not authorize monetary relief for a violation." (citing McNeil v. United States, 78 Fed. Cl. 211, 228 (2007), aff'd, 293 Fed. App'x. 758 (Fed.Cir.2008) ("Sections 3701, 3702, 3711, and 3716 are not money-mandating sources of jurisdiction in this court.")). Only such a "money-mandating" statute can provide this court with jurisdiction to hear a claim under the Tucker Act.

The second provision cited by plaintiff, 31 U.S.C § 3720A(a), states:

> Any Federal agency that is owed by a person a past-due, legally enforceable debt (including debt administered by a third party acting as an agent for the Federal Government) shall, and any agency subject to section 9 of the Act of May 18, 1933 (16 U.S.C. 831h), owed such a debt may, in accordance with regulations issued pursuant to subsections (b) and (d), notify the Secretary of the Treasury at least once each year of the amount of such debt.

31 U.S.C § 3720A(a) (2012). This provision imposes reporting requirements upon federal agencies that are owed debts. Plaintiff alleges that he was deprived of his tax refund due to a debt he owed a California state agency, rather than a United States federal agency, meaning that the entire provision is inapplicable to his case.

The final regulatory provision cited by defendant, 31 CFR § 285.8, also does not provide the court jurisdiction to hear his claims. Section 285.8, titled "Offset of tax refund payments to collect certain debts owed to States," requires the Department of Treasury, Bureau of the Fiscal Service to "offset tax refunds to collect debt under this section in accordance with 26 U.S.C. 6402(e) and (f)." 31 CFR § 285.8(b)(1) (2016). Section 285.8 imposes a number of procedures to be followed by the Bureau of the Fiscal Service and States in carrying out this process. See 31 CFR § 285.8(b)-(h) (2016). There is, however, nothing in 31 CFR § 285.8 that authorizes monetary relief for violation of these procedures, meaning that it is not a money-mandating provision and cannot serve as a source of jurisdiction under the Tucker Act. Further, 31 CFR § 285.8 specifically indicates that it was not intended to supply jurisdiction for any cause of action, stating:

> In accordance with 26 U.S.C. 6402(g), any reduction of a taxpayer's refund made pursuant to 26 U.S.C. 6402(e) or (f) shall not be subject to review by any court of the United States . . . . No action brought against the United

8

States to recover the amount of this reduction shall be considered to be a suit for refund of tax. . . .

31 CFR § 285.8(i) (2016).

Defendant's garnishment action was taken pursuant to the provisions of 26 U.S.C. § 6402, which bars this court from hearing the type of review requests plaintiff seeks to pursue in this court. Section 6402 concerns the Treasury Department's powers to issue tax refunds and authorizes the Treasury Department to offset the amount of any tax refund by the amount owed to a state. Subsection (e) of 26 U.S.C. § 6402 requires the Secretary of the Treasury to offset federal income tax refunds and apply the offset to any a "past-due, legally enforceable State income tax obligation" upon receiving notice from a state that such a tax obligation is owed. 26 U.S.C. § 6402(e)(1). Subsection (f) of 26 U.S.C. § 6402 requires the Secretary to do likewise for any "covered unemployment compensation debt" owed to a state. 26 U.S.C. § 6402(f)(1). Subsection (g) of 26 section 6402 explicitly bars judicial review of any action "brought to restrain or review a reduction authorized" by either subsection (e) or (f) and states that "[n]o action brought against the United States to recover the amount of any such reduction shall be considered to be a suit for refund of tax." 26 U.S.C. § 6402(g); see also Wagstaff v. United States, 118 Fed. Cl. 172, 179 n. 2, aff'd, 595 F. App'x 975 (Fed. Cir. 2014) ("To the extent that Plaintiff challenges the Government's authority to 'offset[ ] Plaintiff's income tax return,' the court does not have jurisdiction to adjudicate that claim . . . ." (citing 26 U.S.C. § 6402(g)) (alteration in original)); Ibrahim v. United States, 112 Fed. Cl. 333, 337 (2013) ("[A] taxpayer cannot bring a claim against the Treasury based on unlawful offsets. 26 U.S.C. § 6402(g) . . . .").

Plaintiff argues that the jurisdictional bar in 26 U.S.C. § 6402(g) is inapplicable to his case because that provision was "intended to relieve the Secretary of the Treasury Department of debt offset challenges when they are legal, not illegal." (emphasis in original). Plaintiff argues that the debt offset in this case was illegal because it violated 26 U.S.C. § 6402(e)(5). Section 6402(e)(5) concerns "state income tax obligation[s]." There is, however, no indication that plaintiff's tax refund was offset due to a past due state income tax obligation. Instead, the letter from the California Employment Development Department to the plaintiff, the plaintiff's complaint in the California Superior court, and the decision of the California Unemployment Insurance Appeals Board that was attached to plaintiff's state court complaint indicate that the state of California sought an offset of plaintiff's federal income taxes based on a $3,807.70 overpayment of unemployment insurance benefits. Such a state "unemployment compensation debt" would be subject to 26 U.S.C. § 6402(f)(4) rather than 26 U.S.C. § 6402(e)(4).[4]

---

[4] Under 26 U.S.C. § 6402(f), such "covered unemployment compensation debt" includes:

**(A)** a past-due debt for erroneous payment of unemployment compensation due to fraud or the person's failure to report earnings which has become

9

After reviewing plaintiff's complaint, even acknowledging plaintiff's pro se status, plaintiff has failed to make any factual allegations indicating that the debt he owed the state of California failed to meet the requirements of 26 U.S.C. § 6402(f)(4), and, thus, that the Department of the Treasury violated the applicable provision in 26 U.S.C. § 6402(f) when it offset his federal income tax returns based on the debt he owed the state of California. Therefore, the jurisdictional bar imposed by 26 U.S.C. § 6402(g) applies squarely to plaintiff's present case, and the court lacks jurisdiction to hear plaintiff's claims.[5]

---

> final under the law of a State certified by the Secretary of Labor pursuant to section 3304 and which remains uncollected;
>
> **(B)** Contributions due to the unemployment fund of a State for which the State has determined the person to be liable and which remain uncollected; and
>
> **(C)** any penalties and interest assessed on such debt.

26 U.S.C. § 6402(f)(4).

[5] In his response to the defendant's motion to dismiss, plaintiff appears to argue that he has a separate cause of action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2012), stating that:

> From 2015 through 2016, the Plaintiff has requested the Defendant-Treasury Dept. to abide by the 5 U.S.C. § 552 Freedom of Information Act (FOIA) and provide the Plaintiff with specific information from his Internal Revenue Service (IRS) tax file. As a matter of fact, in the plaintiff original complaint file [sic] July 5, 2016, rule 5 U.S.C. § 552 was a requested [sic] to the Court of Federal Claims for a ruling on. The monetary damages stated in the Plaintiff's original complaint would probably only be applicable if the Defendant doesn't grant the (IRS) tax file to the plaintiff under the "Freedom of information Act."

Plaintiff's statement that his complaint requested "a ruling on" a FOIA request appears to be a reference to his request for the following relief: "Disclosure of State credit agencies illegal authorization to garnish the Plaintiff's federal income taxes submitted to the Department of the Treasury." Because FOIA "lacks any money-mandating provisions" and "expressly provides for jurisdiction in 'the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia,'" 5 U.S.C. § 552(a)(4)(B), and the United States Court of Federal Claims is not a United States District Court, this court lacks jurisdiction to consider the merits of any FOIA claim. See McNeil v. United States, 78 Fed. Cl. at 237.

Although this court has found that it lacks jurisdiction to hear Mr. Hick's claims challenging the tax offset in this court, if, as he alleges, plaintiff has fully satisfied his debt and the assessed penalty, he may have an alternative means of pursuing his claims. While 26 U.S.C. § 6402(g) "prohibits suits against DOT [Department of Treasury] merely for carrying out its statutory obligation to collect debts that agencies refer to it," "[t]his statute explicitly reserves plaintiff's ability to sue agency-claimants directly." Dasisa v. Dep't of Treasury, 951 F. Supp. 2d 45, 46 (D.D.C. 2013). In particular, 26 U.S.C. § 6402(g) states: "This subsection does not preclude any legal, equitable, or administrative action against the Federal agency or State to which the amount of such reduction was paid . . . ." Therefore, if plaintiff can prove that the state of California either improperly requested that the Department of Treasury offset, or improperly continues to offset, his federal income tax refund on the state's behalf, nothing in 26 U.S.C. § 6402 prevents him from filing suit in California state court against the state of California in order to recover the amounts that have been deducted from his refunds. See id. ("DOT is therefore the wrong defendant in this matter. To pursue this matter, the plaintiff must sue the agency claiming his debt and not the debt collector."). Although plaintiff's complaint against the Employment Development Department in California state court in the case of Will Hicks, Jr. v. Employment Development Department has been dismissed based on plaintiff's request to do so, the complaint was dismissed, without prejudice. Thus, it appears that plaintiff still may be able to pursue a remedy in the state court.

## CONCLUSION

For the reasons stated above, the court lacks jurisdiction to consider any of the claims alleged in plaintiff's complaint. Defendant's motion to dismiss, therefore, is **GRANTED**, and plaintiff's complaint is **DISMISSED**. The clerk shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**

                                            **MARIAN BLANK HORN**
                                            **Judge**


Although this court has found that it lacks jurisdiction to hear Mr. Hick's claims challenging the tax offset in this court, if, as he alleges, plaintiff has fully satisfied his debt and the assessed penalty, he may have an alternative means of pursuing his claims. While 26 U.S.C. § 6402(g) "prohibits suits against DOT [Department of Treasury] merely for carrying out its statutory obligation to collect debts that agencies refer to it," "[t]his statute explicitly reserves plaintiff's ability to sue agency-claimants directly." Dasisa v. Dep't of Treasury, 951 F. Supp. 2d 45, 46 (D.D.C. 2013). In particular, 26 U.S.C. § 6402(g) states: "This subsection does not preclude any legal, equitable, or administrative action against the Federal agency or State to which the amount of such reduction was paid . . . ." Therefore, if plaintiff can prove that the state of California either improperly requested that the Department of Treasury offset, or improperly continues to offset, his federal income tax refund on the state's behalf, nothing in 26 U.S.C. § 6402 prevents him from filing suit in California state court against the state of California in order to recover the amounts that have been deducted from his refunds. See id. ("DOT is therefore the wrong defendant in this matter. To pursue this matter, the plaintiff must sue the agency claiming his debt and not the debt collector."). Although plaintiff's complaint against the Employment Development Department in California state court in the case of Will Hicks, Jr. v. Employment Development Department has been dismissed based on plaintiff's request to do so, the complaint was dismissed, without prejudice. Thus, it appears that plaintiff still may be able to pursue a remedy in the state court.

## CONCLUSION

For the reasons stated above, the court lacks jurisdiction to consider any of the claims alleged in plaintiff's complaint. Defendant's motion to dismiss, therefore, is **GRANTED**, and plaintiff's complaint is **DISMISSED**. The clerk shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**

**MARIAN BLANK HORN**
**Judge**